**REESE LLP**
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Kate J. Stoia (State Bar No. 183471
*kstoia@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MEREDITH HIGHTOWER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>Defendant. | Case No. 2:26-cv-08770-FMO<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Hearing Date: September 24, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 3D<br>Judge: Hon. Fernando M. Olguin<br>Courtroom: 6D |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... 3

INTRODUCTION .................... 4

BACKGROUND .................... 5

I. Peloton Sells Equipment and Services to the General Public in California and Across the United States. .................... 5

II. Peloton Sells and Charges for Duplicative or Unusable Memberships without Providing the Requisite Notice to Consumers. .................... 6

III. Peloton Has Taken No Corrective Action for Duplicative or Unusable Memberships Despite Its Long Awareness of the Issue. .................... 8

IV. Plaintiff Agreed to Peloton's TOS, but Her Claims For Public Injunctive Relief Cannot Be Contractually Waived and Are Not Arbitrable. .................... 9

V. Peloton Charged Plaintiff Thousands of Dollars for a Membership She Did Not Use and Could Not Use. .................... 11

VI. Plaintiff Seeks Only Prospective Relief Because She Already Received a Full Refund. .................... 11

LEGAL STANDARD .................... 12

ARGUMENT .................... 13

I. Whether Plaintiff Seeks Public Injunctive Relief Must Be Determined by This Court under California Law. .................... 13

II. Under California Law, Plaintiff Clearly Seeks Public Injunctive Relief. .................... 14

III. Under California Law, Defendant's Absolute Bar Against Seeking

Public Injunctive Relief Cannot Be Enforced. ..... 22

IV. Plaintiff's Claims Should Proceed in This Court. ..... 22

CONCLUSION ..... 23

CERTIFICATE OF COMPLIANCE ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019) .................................... 12

*Chien v. Bumble Inc.*, 641 F.Supp.3d 913 (S.D. Cal. 2022).................................... 13

*Coach, Inc. v. Citi Trends, Inc.*, 2020 WL *13064695* (C.D. Cal. July 20, 2020)........................................................ 22

*Delisle v. Speedy Cash*, 818 Fed. App'x. 608 (9th Cir. 2020)........................... 13, 14

*DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148 (9th Cir. 2021) ............................. 12, 17

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021) ............................................................................passim

*Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, (9th Cir. 2019).............................. 22

*Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518 (2025) ........................ 18, 19, 20, 21

*Lee v. Tesla, Inc.*, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020)........................... 19

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).............................................passim

*Pilcher v. CarMax Auto Superstores, Inc.*, 2025 WL 90654 (E.D. Cal. January 14, 2025) ..................................................... 19

**STATUTES**

Cal. Civ. Code § 1750 *et seq.* ("CLRA") .............................................4, 12, 15, 19

Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") .................................4, 12, 15, 19

Cal. Bus. & Prof. Code § 17600 *et seq.* ("ARL") ...................................4, 5, 16, 19

**RULES**

Federal Rule of Civil Procedure 15 ........................................................................ 17

Plaintiff Meredith Hightower respectfully submits this memorandum of points and authorities in opposition to the motion to compel arbitration and stay proceedings (the "Motion," ECF No. 14) filed by Defendant Peloton Interactive, Inc. ("Defendant" or "Peloton"). For the reasons below, Defendant's Motion is meritless, and the Court should deny it in its entirety.

## INTRODUCTION

Plaintiff, a California citizen, alleges that Defendant violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600 *et seq.* ("ARL"). Plaintiff also alleges that Defendant is engaged in unjust enrichment under New York law. *See* Complaint ("Compl."), ECF No. 1-2, at ¶¶ 74-111.

Plaintiff alleges that Peloton enrolls and charges consumers for unusable or duplicative memberships without clear and conspicuous notice as required by the ARL; Peloton fails to provide ARL-compliant methods for cancelling such memberships; and Peloton fails to provide reasonable refunds for the unused membership. *Id.* at ¶¶ 15-20, 40-48. Peloton is well aware of the numerous complaints about its practices. *Id.* at ¶¶ 21-32. Peloton has repeatedly acknowledged the "frustration" caused by what Peloton itself calls "duplicative" Memberships. *Id.* at ¶¶ 33-36. Despite Peloton's knowledge of this systemic problem of its own creation, Peloton continues to engage in its unlawful conduct and continues to enrich itself by charging consumers for duplicative or unusable memberships that provide no additional benefit or service. *Id.* at ¶¶ 38, 108-109.

Plaintiff does not seek any remedies for Peloton's past conduct because

Peloton unilaterally made an exception to its policy and provided Plaintiff with a full refund of the charges for her duplicative, unusable Peloton membership. *Id.* at ¶ 56. Accordingly, Plaintiff seeks only prospective injunctive relief "to enjoin Peloton's unlawful and unjust business practices pertaining to its memberships that are sold and made available to the general public." *Id.* at ¶ 2. The injunctive relief she requests—such as requiring Defendant to comply with the ARL with respect to its auto-renewing memberships and requiring Defendant to clearly and conspicuously inform consumers that they may be creating a duplicative or unusable membership—broadly benefit all consumers. *See Id.* at p. 21 ("Prayer for Relief").

In its Motion, Defendant asks this Court to disregard Plaintiff's allegations regarding the public injunctive relief she seeks. Defendant then asks this Court to apply New York law instead of California law to evaluate whether Defendant can enforce the provision in the Terms of Use ("TOU") which categorically bars Plaintiff from seeking public injunctive relief in any forum. This Court cannot do so under controlling precedent. Instead, this Court must apply California law and must void the contractual waiver of the right to seek public injunctive relief in all forums under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). Defendant's Motion must be denied.

## BACKGROUND

### I. Peloton Sells Equipment and Services to the General Public in California and Across the United States.

Peloton is a fitness and wellness company that offers fitness equipment and digital content. *See* Compl., ECF No. 1-2, at ¶ 9. Peloton sells its products and services to the general public throughout the United States both online and through physical stores. *See* https://www.onepeloton.com/ (last accessed on September 1,

2026). Peloton maintains over forty stores or authorized retailers in California alone. *See* https://stores.onepeloton.com/en-US/ (last accessed on September 1, 2026).

## II. Peloton Sells and Charges for Duplicative or Unusable Memberships without Providing the Requisite Notice to Consumers.

A consumer may buy or rent Peloton-connected fitness equipment, currently the Bike, Bike+, Tread, Tread+, Row, and Row+ (collectively, the "Product"). Compl., ECF No. 1-2, at ¶ 10. However, in order to access Peloton's online classes, content, and features (collectively, "Content"), the consumer must separately buy and pay for a monthly or annual subscription ("Membership") pursuant to Peloton's Membership Terms. *Id.* The Membership Terms are incorporated into and part of Peloton's Terms of Service ("TOS"). *Id.* Memberships are on a monthly or annual "cycle," which automatically renews, and are billed for until cancelled. *Id.* at ¶ 11.

Peloton's "All-Access Membership" and "Rental Membership" may only be purchased or acquired in connection with a Product and provide the member and the member's household at one residential address with full access to Peloton's Content on that Peloton Product in addition to all of the Content on the Peloton App. *Id.* at ¶ 13. ***A single Peloton Product cannot support or utilize two Memberships concurrently.*** *Id.* at ¶ 106. *See also* Motion at 3 ("Under Peloton's Membership Terms, if a user wants on-device access on ***two pieces of hardware*** . . . the Membership Terms require a user to purchase and maintain two All-Access Membership subscriptions.") (emphasis added).

Consumers reasonably believe that, upon buying a new or upgrading their existing Product ***so that they have only one piece of hardware***, they will pay for only one Membership associated with the new or upgraded Product. Unfortunately

for consumers, this is not true. Peloton instead will bill for multiple Memberships associated with the same Product even though the additional Membership provides no additional benefit or service. *Id.* at ¶¶ 15, 106.

Consumers also reasonably believe that, upon upgrading their existing Membership, they will pay for only one Membership associated with their account. Unfortunately for consumers, this is also not true. Peloton instead will bill for multiple Memberships associated with the same account when the additional Membership provides no additional benefit or service. *Id.* at ¶ 16.

While "a user might want multiple bikes for a variety of reasons," Motion at 3, there is no conceivable reason why a user would want multiple Memberships if the additional Memberships provide no additional benefit.

Peloton does not provide clear and conspicuous notice to its customers that they are buying or paying for unusable or duplicative Memberships, including by the following notice failures:

- Peloton does not clearly and conspicuously inform its customers that they are creating a new Membership when they log into a Product for the first time after a purchase, upgrade, or reset.
- Peloton does not have any guardrails to prevent its customers from signing up for an unusable or duplicative Membership. For example, a Product does not provide any notice to the user of the Product that a Membership is already associated with the Product before enrolling the user in a new Membership. Similarly, a Peloton account holder is not notified of an existing Membership when that account holder signs up for a new Membership with the same account credentials.

- Peloton fails to provide an acknowledgement email for each Membership on each Product or account, which includes the automatic renewal offer terms, cancellation policy, and/or information regarding how to cancel the Membership.
- Peloton fails to provide an annual notice for each Membership on each Product or account detailing the renewal frequency, cost, and clear cancellation instructions.
- Peloton fails to provide an immediate, easy-to-use cancellation method for each Membership.

*Id.* at ¶ 17.

## III. Peloton Has Taken No Corrective Action for Duplicative or Unusable Memberships Despite Its Long Awareness of the Issue.

Peloton has known for years that many of its customers are paying for duplicative or unusable Memberships. *Id.* at ¶ 18. Peloton knew or should have known that consumers do not always carefully study their billing statements regarding their Memberships. Peloton knew or should have known that many consumers pay for multiple Memberships, each automatically renewing and lasting for either one month or one year, before the consumer discovers that they are paying for such unusable or duplicative Memberships. *Id.* at ¶ 19. Peloton nonetheless unreasonably limits its refund policy with respect to both the amount of charges it will refund and the time period for which it will refund. As a result, Peloton charges consumers for unusable or duplicative Memberships that they did not and could not use. *Id.* at ¶ 20. There have been hundreds of complaints about Peloton's practices and refusal to provide a full refund. *Id.* at ¶ 21. Peloton has repeatedly acknowledged

the "frustration" caused by what Peloton itself calls "duplicative" Memberships. The following are just a few recent examples from the Better Business Bureau (BBB):

- On January 13, 2026, Peloton responded to a complaint with the BBB: "Were [sic] sorry for the frustration that this has caused the Member. We found that a duplicate membership remained active after a plan change due to the plan and activation on new Membership on the same day…"
- On February 16, 2026, Peloton responded to a complaint with the BBB: "Were [sic] sorry for the frustration that this has caused the Member regarding the duplicate memberships on their account…"
- On February 18, 2026, Peloton responded to a complaint with the BBB: "Were [sic] sorry for the frustration that this has caused the Member. We understand that receiving multiple charges and navigating various communication channels can be incredibly taxing…"

*Id.* at ¶¶ 34-36. Despite its understanding, Peloton has not implemented corrective action to prevent duplicative or unusable Memberships, and Peloton only refunds a fraction of the Membership fees paid for these unused and/or unusable Memberships. *Id.* at ¶ 38.

## IV. Plaintiff Agreed to Peloton's TOS, but Her Claims For Public Injunctive Relief Cannot Be Contractually Waived and Are Not Arbitrable.

Plaintiff Hightower was a long-term customer of Peloton. Compl., ECF No. 1-2, at ¶¶ 49-54. She still owns Peloton's Bike+ for which she paid thousands of dollars in 2020. *Id.* at ¶ 62. Until 2026, she paid for ***two*** All-Access Membership, which automatically renewed on a monthly basis, even though she only possessed only ***one*** Product at all times. *Id.* at ¶ 54. Plaintiff does not dispute that she agreed

to Peloton's TOS. Indeed, she referenced and incorporated the latest version of the TOS dated October 1, 2025 in her Complaint. *Id.* at ¶ 10. As represented by Peloton, the relevant provisions of the TOS have remained the same for years, whether the January 14, 2025 version submitted by Defendant as the operative TOS or the October 1, 2025 version attached to the Complaint. *See* Motion at 9 ("The arbitration clause across all versions of the Terms of Service that Plaintiff agreed to is materially identical for purposes of this case.").

Plaintiff also does not dispute that her individual claims for damages would be arbitrable. However, the Complaint makes clear that she does ***not*** assert ***any*** individual claims for past harm but instead seeks prospective public injunctive relief. *See* Compl., ECF No. 1-2, at ¶¶ 74-111 and "Prayer for Relief."

The TOS's Class Action Waiver unequivocably states that the parties may not bring any "request for public injunctive relief" in any forum. *See* ECF 14-11 (January 14, 2025 TOS) at Section 20.8 ("Class Action Waiver"); Compl., ECF No. 1-2, Ex. 3 (October 2, 2025 TOS) at Section 20.5 ("Class Action Waiver"). As discussed below, this waiver is not enforceable under California law, which law must be applied by the Court.

Under Peloton's TOS (whether the January 14, 2025 or the October 1, 2025 versions), the arbitration agreement states:

> [O]nly a court of competent jurisdiction . . . (and not an arbitrator) shall have the exclusive authority to resolve any claim that all or part of the Class Action Waiver set forth in this Terms . . . are unenforceable, unconscionable, void, or voidable.

ECF 14-11 (January 14, 2025 TOS) at Section 20.4 ("Conducting Arbitration and

Arbitration Rules."); Compl., ECF No. 1-2, Ex. 3 (October 2, 2025 TOS) at Section 20.4 ("Conducting Arbitration and Arbitration Rules.").

Defendant does not contest that this Court is a court of competent jurisdiction. *See* Motion at 9 ("Thus, to the extent the *McGill* issue bears on the enforceability of this clause in the Class Action Waiver, this Court should decide the threshold question of 'whether the operative complaint actually seeks public injunctive relief in the first place.'").

## V. Peloton Charged Plaintiff Thousands of Dollars for a Membership She Did Not Use and Could Not Use.

Although Plaintiff had only one Product at all times and had only one account with Peloton, Peloton nonetheless charged Plaintiff for two Memberships. Plaintiff was charged thousands of dollars for a wholly unusable and unused Membership that was associated with a Product that Peloton had agreed, arranged to, and did pick up from Plaintiff's home in September 2020. *Id.* at ¶¶ 50-51. Citing company policy, Peloton initially refused to refund Plaintiff the full amount of the charges for the unusable and unused Membership. *Id.* at ¶ 54. Only after Plaintiff engaged counsel to communicate with Peloton about her experience, did Peloton unilaterally make an exception to its policy and provide a full refund of the money Plaintiff paid for the unusable Membership. *Id.* at ¶ 56.

## VI. Plaintiff Seeks Only Prospective Relief Because She Already Received a Full Refund.

Because Plaintiff already received a full refund, she is not seeking relief for Peloton's past practices. Instead, Plaintiff brings this suit only for forward-looking injunctions that seek to prevent Peloton's future violations of law for the benefit of

the general public as a whole. *See Id.* at ¶ 2 (Plaintiff "seeks to enjoin Peloton's unlawful and unjust business practices pertaining to its memberships that are sold and made available to the general public."). Even though Plaintiff wishes to buy a Membership in order to get full use of the Bike+ she purchased in September 2020, she is refraining from doing so. Based on her experience (*id.* at ¶¶ 58-61), Plaintiff has a legitimate "fear that Peloton will not provide her with clear and conspicuous notices about the Membership and will again charge her for a duplicative or unusable Membership." *Id.* at ¶ 62. Thus, Plaintiff is in the same position as all consumers in the United States to whom Peloton markets and sells its Memberships, except that she is now aware of Peloton's unlawful practices.

## LEGAL STANDARD

"California's legal requirement that contracts allow public injunctive relief is known as the *McGill* rule." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021). "[P]ublic injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 955 (internal quotation omitted); *see also Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541-42 (9th Cir. 2021) (citing *McGill*, 2 Cal.5th at 955). Under the *McGill* rule, any contract that bars public injunctive relief in both court and arbitration is invalid. *Hodges*, 21 F.4th at 539. The *McGill* rule is not preempted by the Federal Arbitration Act. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 830-31 (9th Cir. 2019).

## ARGUMENT

### I. Whether Plaintiff Seeks Public Injunctive Relief Must Be Determined by This Court under California Law.

Peloton's arbitration agreement states that "only a court of competent jurisdiction . . . (and not an arbitrator) shall have the exclusive authority to resolve any claim that all or part of the Class Action Waiver set forth in this Terms . . . are unenforceable, unconscionable, void, or voidable." *See* ECF 14-11 (January 14, 2025 TOS) at Section 20.4 ("Conducting Arbitration and Arbitration Rules."); Compl., ECF No. 1-2, Ex. 3 (October 2, 2025 TOS) at Section 20.4 ("Conducting Arbitration and Arbitration Rules."). Defendant does not dispute that this Court is one of competent jurisdiction. Motion at 19.

Peloton, however, claims that the Court should apply New York law to make that determination. Motion at 19; 22 n. 3. Not so. Regardless of the New York choice-of-law provision in the TOS, this Court must interpret the arbitration agreement under California law, "due to California's strong interest in resolving the allegations and because an interpretation absent the *McGill* rule would be contrary California's public policy." *Chien v. Bumble Inc.*, 641 F.Supp.3d 913, 939, n. 12 (S.D. Cal. 2022) (applying California law despite Texas choice of law provision). *See also Delisle v. Speedy Cash*, 818 Fed. App'x. 608, 611 (9th Cir. 2020) (applying California law despite Kansas choice of law provision).

In *Delisle*, the operative agreement designated Kansas law as controlling. The Ninth Circuit nonetheless held that the district court properly applied California law in concluding that *McGill* voided the public injunction waiver in the arbitration provision at issue. The Ninth Circuit explained:

> Even if the designated state has a substantial relationship to the parties or their transaction, we may not enforce the choice of law provision if (1) the substantive law of Kansas is "contrary to a fundamental policy of California" and (2) California has a "materially greater interest" than Kansas in resolving the issue. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1079 (2001).

*Delisle*, 818 Fed. App'x. at 611. The Ninth Circuit concluded that "the district court correctly applied California law" because "Plaintiffs reside in California, Speedy Cash has over thirty stores in California, and California law invalidates contractual waivers of the right to seek public injunctive relief in all forums." *Id.*

California law likewise applies here because New York law is contrary to California policy. According to Defendant, "agreements that waive the right to seek injunctive relief on behalf of others are not 'unenforceable' under New York law." *See* Motion at 21-22 (citing cases). California also holds a materially greater interest than New York in this litigation because Plaintiff resides in California, Peloton provides equipment and services in California online and through over forty stores/authorized retailers in California; and California's public policy protects Plaintiff's right to seek public injunctive relief. By asking this Court to apply New York law, Peloton is asking this Court to commit reversible error.

## II. Under California Law, Plaintiff Clearly Seeks Public Injunctive Relief.

The Ninth Circuit in *Hodges* stated the standard used in this Circuit to determine whether the requested relief is public injunctive relief within the meaning of *McGill*. It held:

> [P]ublic injunctive relief within the meaning of *McGill* is limited to

> forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party. . . . Such an injunction attempts to stop future violations of law that are aimed at the general public, and imposing or administering such an injunction does not require effectively fashioning individualized relief for non-parties.

21 F.4th at 542.

Here, the Complaint explicitly seeks only forward-looking injunctions for the benefit of the general public as a whole. Because Plaintiff was provided a full refund of all charges for her duplicative Membership, she does not seek any remedy for past injury either for herself or any non-parties. Plaintiff's request for relief is limited to prospective injunctions to prevent future violations of law by Peloton in the sale of automatically recurring Memberships to the public.

Each of her three causes of action are clearly labeled "For Injunctive Relief Only." For her first cause of action for violations of the CLRA, she seeks only the following injunctive relief:

> Plaintiff requests that this Court enjoin Defendant from continuing to employ unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, existing and potential customers of Peloton in California will continue to suffer harm.

Compl., ECF No. 1-2, at ¶ 82. For her second cause of action under the UCL, she

seeks only the following injunctive relief:

> In accordance with California Business and Professions Code section 17203, Plaintiff seeks, for existing and potential customers of Peloton in California, an order enjoining Defendant from continuing to conduct business through unlawful, unfair, or fraudulent business acts or practices and to commence corrective action.

*Id.* at ¶ 102. For her third cause of action for unjust enrichment under New York law, Plaintiff seeks only the following injunctive relief.

> Plaintiff seeks for the benefit of existing and potential customers of Peloton in the United States an order enjoining Defendant from continuing to unjustly enrich itself and to commence corrective action

*Id.* at ¶ 111.

***Plaintiff nowhere seeks damages or restitution for herself or any putative class members.*** Indeed, much of the relief she seeks is not on the behalf of any class members at all. Rather, her "Prayer for Relief" starts with the following requests for injunctive relief that she makes "on behalf of herself individually":

(a) Injunctive relief requiring Defendant to stop charging consumers for unusable or duplicative Memberships;

(b) Injunctive relief requiring Defendant to stop imposing unreasonable limits on refunds to consumers who request refunds of charges for unusable or duplicative Memberships;

(c) Injunctive relief requiring Defendant to comply with the ARL;

(d) Injunctive relief requiring Defendant to clearly and conspicuously inform consumers that they may be creating a duplicative or

> unusable Membership and provide a method including on Products to easily cancel Memberships . . . .

*Id.* at p. 21 ("Prayer for Relief").[1]

Defendant is silent (*see* Motion at 21) as to how these requests for injunctive relief could possibly be "for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties[.]" *Hodges*. 21 F.4th at 543.

The analysis of the Ninth Circuit in *DiCarlo* applies here. In that case, the plaintiff filed a putative class action to take down the defendant's "high-tech debt trap." *DiCarlo*, 988 F.3d at 1152. The Ninth Circuit explained:

> Consider the relief sought here. Among other things, DiCarlo seeks to enjoin MoneyLion from falsely advertising to the general public within the State of California that the creditbuilder Loan contains no hidden fees. But what good will that do her in the future? She already knows that these claims are (allegedly) untrue. That's why she sued. DiCarlo seeks the injunction to aid those who do not already know what she has learned. That is public injunctive relief.

---

[1] The sole substantive relief that Plaintiff seeks for putative class members is "[i]dentification of class members and notification to them that Peloton has charged them for an unusable or duplicative Memberships and that refunds of such charges may be available to them." *Id.* This requested relief is incidental to the injunctions Plaintiff seeks for the general public. To the extent that this Court concludes that the sole relief Plaintiff seeks for putative class members does not constitute public injunctive relief, Plaintiff will amend the Complaint under Federal Rule 15 to remove altogether the class allegations and request for relief for the putative class. To date, Defendant has neither answered nor moved to dismiss the Complaint, so that Plaintiff has the right to amend as a matter of course under Rule 15(a)(1)(B).

*Id.* (internal quotation, edits, and citations omitted).

Because Peloton markets and sells its Memberships to all members of the public, the injunctive relief that Plaintiff seeks "for the benefit of existing and potential customers of Peloton" necessarily encompasses all consumers.

The recent case of *Khan v. Coinbase, Inc.*, 115 Cal. App. 5th 518 (2025), is on point. In *Khan*, the defendant made the same argument made by Peloton here:

> . . . Coinbase does not dispute that its arbitration agreement contains an invalid waiver of the right to seek public injunctive relief. Instead, it attempts to render the invalid waiver irrelevant by arguing Khan's complaint seeks purely private relief. According to Coinbase, the relief sought in the complaint is private because Khan seeks to compel Coinbase to make additional disclosures to existing customers, and thus challenges conduct that is not directed at the public.

*Id.* at 528. The court flatly rejected this argument:

> Coinbase mischaracterizes Khan's complaint, which does *not* seek an order compelling Coinbase to make any disclosures specifically to Khan or any defined group of individuals. Nor does Khan seek monetary relief for injuries sustained by users of the Coinbase platform, including himself, who were once deceived by the allegedly unlawful business practices. Khan alleges that Coinbase's misrepresentations and material omissions violate consumer protection laws that benefit the public, and he seeks an injunction requiring Coinbase to stop violating those laws. Such an injunction constitutes public injunctive relief because it would affect the broader public.

*Id.* at 528-29 (italics in original; internal quotation and citation omitted).

Just like the plaintiff in *Khan*, Plaintiff here does not seek monetary relief for injuries sustained by Peloton current or past customers. Rather, she seeks injunctions requiring Pelton to stop violating consumer protection laws that benefit the public (namely, the UCL, CLRA, and ARL) and stop engaging in wrongful practices aimed at consumers. Thus, the requested relief is the "paradigmatic example" of public injunctive relief that requires no individualized relief for non-parties. *Hodges*, 21 F.4th at 542 ("The paradigmatic example would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan."). *See also Pilcher v. CarMax Auto Superstores, Inc.*, 2025 WL 90654, at*10 (E.D. Cal. January 14, 2025) (finding the plaintiff sought public injunctive relief because enjoining the defendant's misrepresentations benefited the general public of prospective consumers seeking to purchase a vehicle); *Lee v. Tesla, Inc.*, 2020 WL 10573281, at *7 (C.D. Cal. Oct. 1, 2020) (disagreeing with contention "that the type of relief requested is private relief in disguise" and holding that the relief sought against Tesla's misleading marketing practices was public injunctive relief, which is separate from the private relief sought in economic damages).

Importantly, Peloton's conduct is aimed at the general public even if consumers must first create an account with Peloton and agree to its TOS before purchasing or activating a Membership. The defendant in *Khan* argued that the injunctions sought "cannot possibly benefit the public because only existing Coinbase customers can access the platform on which the allegedly unlawful conduct occurs." *Id.*, 115 Cal. App. 5th at 529. The court also rejected this argument:

> *First*, we are not persuaded that Coinbase can insulate itself from a public injunction simply by requiring a consumer to create a user account before engaging with Coinbase and its platform. In our view, the unlawful business practice that Khan describes and seeks to enjoin affects the general public because any member of the public may access and elect to use Coinbase's online platform. True, a potential Coinbase customer must first create a user account before attempting to make a trade, but this is simply the online equivalent of driving to, parking at, and walking into a brick-and-mortar store. Creating a user account is the threshold a potential customer must cross before transacting business with Coinbase, and . . . Coinbase did not demonstrate that it restricts access to its services in a meaningful way, or that any member of the public cannot simply create credentials and access Coinbase's services.

*Id.* at 529 (italics in original, internal quotation and citation omitted). The court continued:

> *Second*, we disagree with Coinbase's underlying assumption that conduct directed at a defendant's customers can never support a request for public injunctive relief. Such a rule would not square with *McGill*, which expressly confirms that a plaintiff who files a class action on behalf of customers allegedly injured by a business's deceptive practices may nonetheless seek public injunctive relief. The pertinent inquiry focuses on the purpose of the injunction. When the primary purpose of an injunction is to prohibit an ongoing violation of consumer

> protection laws, the relief sought is usually public relief because the benefit to the plaintiff or a group of similarly situated individuals is not materially different from the benefit that inures to the broader public. By contrast, when the primary purpose of the injunction is to resolve a dispute by redressing or preventing injury to the individual plaintiff or an ascertainable group of similarly situated persons, the plaintiff is seeking a private injunction. The injunction Khan seeks in this case falls squarely into the former category. Khan seeks to enjoin Coinbase from continuing to engage in unlawful practices pertaining to the operation of an online cryptocurrency business that is accessible to members of the public. Neither the complaint's allegations nor Khan's prayer for relief are narrowly focused on his specific injury, nor does he seek a specific change to Coinbase's platform that would benefit existing account holders but not members of the public who become future users of the Coinbase platform.

*Id.* at 530 (italics in original, internal citation omitted).

Like the defendant in *Khan*, Peloton offers and sells its Memberships to the public, and any member of the public can create credentials to purchase and activate a Membership. Thus, Plaintiff's request for injunctive relief would benefit all members of the public, any one of whom could become a future subscriber of Peloton's Memberships.

**III. Under California Law, Defendant's Absolute Bar Against Seeking Public Injunctive Relief Cannot Be Enforced.**

The Class Action Waiver in Defendant's TOS prohibits Plaintiff from seeking public injunctive relief either in arbitration or in a court of law. *See* ECF 14-11 (January 14, 2025 TOS) at Section 20.8 ("Class Action Waiver"); Compl., ECF No. 1-2, Ex. 3 (October 2, 2025 TOS) at Section 20.5 ("Class Action Waiver"). Accordingly, the *McGill* rule applies to render that provision void and unenforceable. *Hodges*, 21 F.4th at 539 ("Under that [*McGill*] rule, insofar as a contractual provision purports to waive a party's right to request in any forum public injunctive relief, it is invalid and unenforceable under California law.") (internal quotation and edits omitted).

**IV. Plaintiff's Claims Should Proceed in This Court.**

In its Motion, Peloton neither argues that this Court lacks competent jurisdiction over this case nor that Plaintiff's claims for public injunctive relief can be heard by an arbitrator. Because Peloton made no such arguments in its opening brief, the Court need not consider them to the extent that Peloton raises severance or reformation of the Class Action Waiver for the first time in its reply brief. *Coach, Inc. v. Citi Trends, Inc.*, 2020 WL 13064695, at *5 n. 2 (C.D. Cal. July 20, 2020) ("litigants forfeit an argument by raising it for the first time in their reply brief") (citing *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1018 n.8 (9th Cir. 2019)).

All of Plaintiff's claims for public injunctive relief thus should proceed before this Court, and the parties should engage in discovery in accordance with this Court's Initial Standing Order, dated July 2025, at Section IIIA (DISCOVERY/Generally).

## CONCLUSION

The Court should deny Defendant's Motion in its entirety.

Date: September 3, 2026

Respectfully submitted,

**REESE LLP**

By: */s/ Sue J. Nam*

Sue J. Nam (SBN 206729)
*snam@reesellp.com*
Kate J. Stoia (State Bar No. 183471
*kstoia@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Meredith Hightower, certifies that this brief contains 5046 words, which complies with the word limit of L.R. 11-6-1.

Date: September 3, 2026

Respectfully submitted,

**REESE LLP**

By: */s/ Sue J. Nam*
Sue J. Nam (SBN 206729)

*Counsel for Plaintiff and the Proposed Class*